# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

Nº 06-CV-2237 (JFB) (ETB)

————————————————

## DENNIS J. WALSH,

Plaintiff,

VERSUS

## THE SUFFOLK COUNTY POLICE DEPARTMENT, COMMISSIONER RICHARD DORMER, SERGEANT PATRICK D. MAHER AND POLICE OFFICER MICHAEL VACCARO,

Defendants.

————————————————

MEMORANDUM AND ORDER
May 5, 2008

————————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Dennis J. Walsh ("plaintiff" or "Walsh") brought this action against the Suffolk County Police Department ("SCPD"), Commissioner Richard Dormer ("Dormer"), Sergeant Patrick D. Maher ("Maher"), and Police Officer Michael Vaccaro ("Vaccaro") (collectively, "defendants") alleging violations of due process pursuant to 42 U.S.C. § 1983, and other various state law claims for breach of contract and slander.

Plaintiff voluntarily discontinued his claims for denial of equal protection and disability discrimination brought pursuant to federal and New York State law. (*See* Pl.'s Opp. Br., at 1.) Thus, the only remaining federal claim is the First Cause of Action under Section 1983 which alleges a violation of plaintiff's due process rights.

It is undisputed that, during plaintiff's term as a probationary police officer, the SCPD discovered that plaintiff failed to disclose a prior criminal investigation by police in California (in which plaintiff was the subject) on his application to become a SCPD police officer. After further investigation into plaintiff's background, the SCPD concluded (as reflected in internal memoranda) that plaintiff intentionally omitted this prior interaction with the police and, as a result, they sought and obtained his resignation. In this lawsuit, plaintiff alleges a due process violation on two grounds: (1) that he had a "property right" in continued employment that was denied without due process, and (2) that he was not offered pre- or post-termination procedures to contest the validity of his constructive termination and clear his name from allegedly stigmatizing statements made during this time by the SCPD.

Defendants now move for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. For the following reasons, defendants' motion is granted in its entirety with respect to the remaining Section 1983 claim for violation of due process. In particular, plaintiff, as a probationary employee, did not have a "property interest" in continued employment that can form the basis of a due process claim. Moreover, although even a probationary employee can potentially have a "stigma plus" claim that protects his liberty interest under the Due Process Clause and entitles him to a "name clearing" hearing, plaintiff has no "stigma plus" claim in the instant case as a matter of law for four independent reasons: (1) it is uncontroverted that defendants have never disclosed the stigmatizing statements to any third party and, pursuant to *Brandt v. Board of Cooperative Educational Servs.,* 845 F.2d 416 (2d Cir. 1988), have agreed to remove the stigmatizing information from the plaintiff's personnel file (assuming it was ever in the file) and agreed not to disclose it in the future to any third party; (2) the public disclosure of the stigmatizing information was not caused by the defendants but, rather, occurred when plaintiff disclosed the substance of the stigmatizing statements, and extensive details surrounding his resignation, to the *Daily News* within days of his resignation from the SCPD; (3) plaintiff had an adequate post-deprivation procedure available to him under Article 78 in state court and never availed himself of that process; and (4) plaintiff signed an Authorization to Release Information and Waiver, discharging Suffolk County and its employees from litigation with respect to the usage of documents obtained in connection with his background check. Finally, given that the Section 1983 claim cannot survive summary judgment, the Court declines to exercise

supplemental jurisdiction over the pendent state law claims.

## I. Background

### A. Factual Background

#### 1. Walsh's SCPD Application

The facts described below are taken from the parties' depositions, affidavits, exhibits and defendants' Local Rule 56.1 statement of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party.[1] *See Capobianco v. City of*

---

[1] Defendants point out that plaintiff failed to comply with Local Civil Rule 56.1 in that plaintiff did not file a response to defendants' Statement Pursuant to Local Rule 56.1 (hereinafter, "Defs.' 56.1"), but instead filed a document entitled Statement of Material Facts pursuant to Local Rule 56.1(b) (hereinafter, "Pl.'s 56.1") that does not correspond to the numbered paragraphs of defendants' numbered paragraphs. However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not comply with Rule 56.1, plaintiff's written submissions in connection with his opposition to the motion cite to the relevant portions of the record upon which plaintiff is relying. Thus, both the defendants and the Court are clearly aware of the portions of the record upon which plaintiff relies in opposition to the motion, and defendants have not identified any prejudice arising from the plaintiff's failure to comply with Rule 56.1. Accordingly, in the exercise of its broad discretion, the Court will not

*New York*, 422 F.3d 47, 54-55 (2d Cir. 2005).

During June 2005, plaintiff applied for a position as a Police Officer with the SCPD. (*See* Defs.' Exh. B.) Plaintiff signed a Conditional Offer of Employment, an Integrity Statement, and an Authorization to Release Information and Waiver with the SCPD on June 11, 2005. (Defs.' 56.1 ¶¶ 1-3.)[2] The Conditional Offer of Employment states, in relevant part,

> I am currently *eligible* for consideration for employment as a Police Officer in the Suffolk County Police Department.
>
> As part of the pre-employment stage of the selection process, a background investigation of my character has been initiated. . . . I am being presented with A CONDITIONAL OFFER OF EMPLOYMENT. . . .

---

reject plaintiff's opposition based upon his failure to comply with Rule 56.1, but rather has fully considered plaintiff's opposition to defendants' summary judgment motion on the merits. *See, e.g., Photopaint Techs., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 n.2 (2d Cir. 2003) (excusing failure to comply with Local Civil Rule 56.1 where the relevant facts were apparent from the parties' submissions and there was no evidence of prejudice from the defect); *Williams v. R.H. Donnelley, Inc.,* 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law).

[2] Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no evidence to controvert that fact.

I understand that this offer of employment is conditional upon my taking and successfully passing a medical examination, a psychological examination, a polygraph examination, and a physical fitness screening test administered by the Suffolk County Department of Civil Service, *and that my on-going background investigation reveals nothing of a derogatory nature.*

(Defs.' Exh. E.) (emphases added). On August 29, 2005, plaintiff signed his Acceptance of Appointment, which further states:

> I, Dennis J Walsh, hereby accept appointment to the Suffolk County Police Department as a Police Officer, effective September 12, 2005. . . . *[T]his appointment shall be for a Probationary Term of eighteen (18) months.*

(Defs.' 56.1 ¶ 6; Defs.' Exh. I.) (emphasis added).[3]

### 2. The Investigation & Resignation of Walsh

Plaintiff alleges that Police Officer Vaccaro, who has been employed by the SCPD for twenty years, was assigned to the Applicant Investigation Unit at the time of the

---

[3] Plaintiff also notes that, in connection with his application to the SCPD, he was given a polygraph test on July 20, 2005, which included questions about any criminal history or police contacts, and there was nothing in the results of that test indicating that he was withholding any information about his background. (Pl.'s 56.1 ¶¶ 2-13.)

related events. (Pl.'s Opp. Br., at 6.) Vaccaro was assigned the duty of investigating plaintiff's background for admission to the police academy. (*Id.*) On June 20, 2005, Vaccaro sent inquiries to numerous police agencies, pursuant to Walsh's signed Authorization to Release Records and Waiver. (Defs.' 56.1 ¶ 7.) On September 14, 2007, Vaccaro received a reply from Naval Criminal Investigative Service ("NCIS"). (*Id.* ¶ 8.) NCIS records reported that plaintiff was the subject of a criminal investigation by the Oceanside Police Department in California in which he was accused of extortion and harassment of a woman (hereinafter, "L.J."), concerning the threatening use of a sexual video tape. (*Id.* ¶ 9.) It is also undisputed in connection with that criminal investigation that plaintiff was questioned by members of the Oceanside Police Department and consented to a search of his apartment. (Pl.'s 56.1 ¶¶ 23-25; Defs.' Ex. J.) Plaintiff never disclosed his contact with the Oceanside Police Department during his application process with the SCPD prior to his statement of September 15, 2005, even though the police officer application requires such disclosure.[4] (*Id.* ¶ 11.)

On September 15, 2005, Vaccaro and Patrick Maher[5] interviewed plaintiff to get his

explanation for failing to disclose the prior police questioning on his application. (Pl.'s Opp. Br., at 14.) That same day, plaintiff wrote a statement to Vaccaro and Maher detailing his involvement with L.J. and the Oceanside Police Department (Defs.' 56.1 ¶ 10; Defs.' Exh. L.) Plaintiff alleges in his statement that he "forgot" about his involvement in the incident, which was why he did not include it on his application. (Defs.' 56.1 ¶ 12; Defs.' Exh. L.)

On September 16, 2005, Vaccaro received additional reports from NCIS, which included that L.J. had made a second criminal report to the Carlsbad Police Department. (Defs.' 56.1 ¶ 13.) As part of that report, L.J. stated that plaintiff asked her, "how she would like to see her face all over the internet." (*Id.*) On that same day, Vaccaro also received Carlsbad Police Department records in which L.J. claimed that Walsh told her that he secretly filmed their sexual encounters, that he owned her now, and that if she did not agree to have sex with him on demand he would make her life a real mess. (*Id.* ¶ 14.) Vaccaro then submitted to Maher a memorandum dated September 19, 2005 summarizing the results of plaintiff's background check (hereinafter, the "Vaccaro Memorandum"), discussed *infra*, and the reports he received from the investigation. (*See* Pl.'s Exh. 12.)

On September 19, 2005, Maher then sought further review of the status of Walsh. (Defs.' 56.1 ¶ 15.) Maher submitted a memorandum dated September 19, 2005 (hereinafter, the "Maher Memorandum"), discussed *infra*, to John McElhone, Chief of Support Services, as a result of the

[4] Question 59 of the application states: "List **ALL Police Contact**, as an adult or juvenile, during which you were questioned, cited, detained, or arrested, whether as a victim/witness/suspect, in any incident. (**Include** charges that were dismissed, dropped, reduced, sealed, or expunged)" (Defs.' Exh. B, SCPD Application, at 16.) The only charge that plaintiff disclosed in that section was for an incident involving "reckless driving" and an "open cont[ainer]." (*Id.*)

[5] Maher had been employed by the SCPD for twenty-two years, and was the commanding

officer of the Investigation Unit during the time of the relevant events in this case. (Pl.'s Opp. Br., at 6.)

information he received from Vaccaro. (*See* Pl.'s Exh. 9.) However, the decision to seek either Walsh's resignation or termination was made by superiors above the level of Maher. (Defs.' 56.1 ¶ 16.) On September 20, 2005, Walsh signed a Resignation of Member form, citing "personal reasons" for his resignation. (*Id.* ¶ 17; Defs.' Exh. R.)

Furthermore, according to plaintiff, on or about September 22, 2005, SCPD concluded an Internal Affairs Bureau case against Walsh for "Conduct Unbecoming" based upon Vaccaro and Maher's investigation. (*See* McGreevy Memorandum dated September 22, 2005 ("McGreevy Mem"); Pl.'s Exh. 20.) The allegations were based upon Walsh's failure to disclose the Oceanside Police Department investigation on his application to become a police officer. Specifically, Sergeant McGreevey referred to plaintiff's "deception" in omitting the Oceanside Police investigation from the SCPD application. The "Conduct Unbecoming" determination was "deemed substantiated." (*Id.*)

Within one week of his resignation, Walsh provided information to the press concerning the reason for his resignation from the SCPD, which resulted in newspaper articles being published on September 27, 2005 (Defs.' Exh. U) and October 2, 2005 (Defs.' Exh. V). (Defs.' 56.1 ¶ 18.) The September 27 article reflects that plaintiff volunteered the underlying facts regarding his resignation to the press in an effort to publicly show that the SCPD treated him unfairly. For example, an excerpt from a newspaper article which appeared in the *Daily News* on September 27, 2007, stated the following regarding the events leading to plaintiff's termination which were supplied by plaintiff:

"On Sept. 12, I started the Suffolk [police] academy," Walsh says. "On Sept. 20, I was told I would have to resign or be terminated." Walsh claims that Suffolk police told him he had left out something in his criminal background. Back in 1998, while stationed in Camp Pendleton, Calif. Walsh was 32 years old and had met and dated a 47-year-old woman. "A two-week fling and then I stopped seeing her," he says. "I thought she was unstable. Next thing I know the . . . police asked the Naval Criminal Investigative Service if they could question me about a complaint this woman filed." The woman claimed that Walsh harassed her and videotaped her while having sex and that he tried to extort money from her. "I spoke to detectives on the base for 45 minutes," Walsh says. "I told them she was a nut. That none of her charges were true. They asked permission to search my apartment. I gave full permission. They took away all of my movies, regular Hollywood movie tapes. They never charged me with anything. Never heard from them again. That was the end of it. I simply cannot believe that an unfounded charge made seven years ago by a crazy woman I met in a bar could come back and take away the job I dreamed of." But it did.

(Defs.' Ex. U.) The article also stated, "When contacted, Suffolk police spokesman Lt. Ted Nieves said that Walsh 'voluntarily resigned on Sept. 20 and because of privacy restrictions we have no further comment.'" (Defs.' Ex. U.) A follow-up October 2, 2005 article in the *Daily News* by the same author contained

similar details that had been previously supplied by plaintiff. (Defs.' Ex. V.)

### 3. Post-SCPD Employment Applications and Positions

On or about October 1, 2005, plaintiff submitted an application with the Central Intelligence Agency ("CIA") to become a Special Agent. (Walsh Decl. ¶ 10.) On November 15, 2005, Walsh received notification that he was being screened for a position within the CIA. (*Id.*)

On or about May 14, 2006, plaintiff met with a CIA background investigator ("George") for a position in the CIA's upcoming class at Langley, Virginia. (*Id.* ¶ 11.) Plaintiff told George that "the SCPD had told [him] that the incident regarding [L.J.], and [his] failure to disclose it to them had caused them to question [his] entire character and integrity." (*Id.*) Plaintiff was also required to reveal those facts when he submitted answers to a CIA written questionnaire. (*Id.*) On August 24, 2006, plaintiff received a letter denying his application for employment with the CIA. (*Id.* ¶ 12.) Plaintiff submitted a second application with the CIA, which was also rejected. (*Id.* ¶ 13.)

In the interim, plaintiff became employed in security on a full time basis with Deutsche Bank during January 2006. (Defs.' 56.1 ¶ 19.) After three months, plaintiff left his job with Deutsche Bank and became employed on a full time basis with Atair Aerospace. (*Id.* ¶ 20.)

### 4. The Allegedly Stigmatizing Statements

Plaintiff relies on written statements by Vaccaro and Maher, as well as a "Conduct Unbecoming" determination by the SCPD, discussed *supra*, as the basis for his due process and slander injuries. The substance of the documents, as highlighted by plaintiff in his brief, are described below.

The report that Vaccaro submitted to Maher concerned the results of Walsh's background check and certain derogatory information that Walsh allegedly "failed to disclose." (*See* Vaccaro Mem.) The Vaccaro Memorandum stated, in pertinent part:

> The undersigned officer contends that, due to the gravity of the allegations and the fact that they are relatively recent, candidate Walsh deliberately withheld this information on his paperwork and during his subsequent interviews.

(Vaccaro Mem, Pl.'s Exh. 12.)

On the same date, as a result of the information received from the Vaccaro Mem, Maher then submitted a memorandum to John McElhone, Chief of Support Services, requesting "further review of this matter." (*See* Maher Mem.) The Maher Memorandum states, in pertinent part:

> The undersigned was made aware of derogatory information regarding the above candidate on 09/14/05. This information consisted of a reply from the Navy Criminal Investigative Service advising of a prior investigation into possible criminal actions perpetrated by Dennis Walsh. The allegations against Dennis Walsh were of a serious nature and call into question his suitability to be a Suffolk County Police Officer.

Based on the information gathered thus far and the fact that Walsh failed to disclose this incident to the investigator when given numerous opportunities to do so, leads me to believe that Walsh intentionally withheld this derogatory information. . . . Walsh's character and integrity must be questioned.

(Maher Mem., Pl.'s Exh. 9.)

## B. Procedural History

On or about December 13, 2005, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging acts of disability discrimination against defendants. On or about February 22, 2006, the EEOC issued plaintiff a Right to Sue Letter.

Plaintiff filed a complaint in this action on May 15, 2006. Defendants moved for summary judgment on December 6, 2007. Oral argument was held on March 14, 2008. The Court permitted plaintiff's counsel to file a sur-reply following oral argument and the sur-reply was received on April 22, 2008. The motion is now fully submitted.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The

moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (noting that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is

insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## III. Discussion

Plaintiff alleged a due process violation under two theories: (1) that he has a property interest in continuing employment at the SCPD of which he was deprived without due process; and (2) that, even if he had no property interest in continued employment as a probationary employee, he has a stigma-plus claim under the Due Process Clause because of stigmatizing statements made by the defendants in connection with his termination which allegedly resulted in his loss of employment and future job opportunities without being provided with a "name-clearing" hearing.

In support of their motion for summary judgment, defendants argue the following: (1) plaintiff did not have a property interest in continued employment as a *probationary* employee with the SCPD and could be lawfully discharged without a hearing and without any specified reason, and therefore cannot assert a due process claim on that basis; (2) to the extent that plaintiff is asserting a "stigma-plus" claim because of allegedly stigmatizing statements by defendants without a name-clearing hearing, such claim must fail as a matter of law because, among other things, (a) it is undisputed that SCPD never disclosed any of the allegedly stigmatizing statements and has stipulated that no such disclosures will occur in the future; (b) it is undisputed that plaintiff voluntarily disclosed all the details regarding the reasons for his resignation to a newspaper

within days of his resignation; and (c) plaintiff signed an Authorization to Release Information and Waiver in connection with his SCPD employment application in which he permitted the release of "any arrest or criminal records, including any investigative files or reports, etc. to Suffolk County" and released Suffolk County and its representatives from any and all liability that resulted from the information obtained therein.

As set forth below, the Court agrees with the defendants that the due process claims cannot prevail as a matter of law based upon the undisputed facts and, therefore, summary judgment is warranted. The Court will address the "property interest" claim and the "stigma-plus" claim separately.

### A. "Property Interest" Claim

Plaintiff contends defendants violated his procedural due process rights by denying him his right to continued employment without holding a hearing to enable plaintiff to contest his termination. Defendants argue that plaintiff, as a probationary employee, has no property interest in continued employment with the SCPD and, therefore, was not entitled to a hearing before any termination of employment.

The Court agrees with defendants. In *Board of Regents v. Roth*, the Supreme Court held that procedural due process requirements "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and *property*." 408 U.S. 564, 569 (1972) (emphasis added). Property interests are determined and created by state laws that "secure certain benefit and that support claims of entitlement to those benefits." *Id.* at 577. Property interests arise

in the employment context "only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause*." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988). Thus, in order to establish a federal procedural due process claim, the plaintiff must first establish that he possesses a property right in his continued employment. *See Bishop v. Wood*, 426 U.S. 341, 345-46 (1976) (holding defendant did not deprive plaintiff of a property interest in continued employment).

It is well settled in New York that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason. *See McKenzie v. Jackson*, 152 A.D.2d 1, 8 (N.Y. App. Div. 1989), *aff'd* 75 N.Y.2d 995 (N.Y. 1990); *see also York v. McGuire*, 63 N.Y.2d 760, 761 (N.Y. 1984); *Connor v. Bd. of Educ.*, 184 A.D.2d 698, 698 (N.Y. App. Div. 1992). Therefore, many federal and state courts in this Circuit have found police officers in situations similar to Walsh to be probationary employees not subject to the same due process protection as permanent employees. *See, e.g., Ryan v. Carroll*, 67 F. Supp. 2d 356, 361 (S.D.N.Y. 1999) (finding police officer to be probationary employee not entitled to due process hearing); *Flood v. County of Suffolk*, 820 F. Supp. 709, 712-13 (E.D.N.Y. 1993) (finding police officer possessed no property right in her probationary position and resulting discharge presents no federal constitutional problems); *York*, 63 N.Y.2d at 761 (upholding discharge of probationary police officer without a hearing).

Although plaintiff suggests in his papers that he is not a probationary employee, that argument is completely contradicted by the undisputed evidence. It is undisputed that plaintiff signed an Acceptance of Appointment with the SCPD. This document set a term of 18 months probationary employment, beginning September 12, 2005. (*See* Defs.' Exh. I.) Plaintiff resigned on September 19, 2005, which was well within the 18 month window of probationary employment mandated by the SCPD. Because plaintiff was clearly a probationary employee, he did not have a property right in continued employment that entitled him to a hearing upon termination.

Plaintiff does not provide any evidence or cite to any state law or ordinance indicating that he is entitled to continued employment as a probationary employee. "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop*, 426 U.S. at 344 (refusing to find property interest where one is not created by state ordinance). As discussed above, New York law clearly does not provide a property right for probationary employees. Accordingly, plaintiff's claim of violation of due process resulting from his SCPD termination, based upon a purported property interest in continued employment, cannot survive summary judgment.[6] The Court will now turn to the plaintiff's stigma-plus theory of liability under the Due Process Clause.

---

[6]  In fact, at oral argument, plaintiff's counsel conceded that his client was a probationary employee and clarified that he was proceeding under a stigma-plus theory in connection with the Section 1983 claim pursuant to the Due Process Clause.

## B. "Stigma-Plus" Claim

Plaintiff argues that he was constructively terminated from his position with the SCPD as a result of the statements made by Maher and Vaccaro regarding plaintiff's character and integrity, as well as the substantiated "Conduct Unbecoming" determination by the SCPD. Moreover, plaintiff asserts that these determinations were made without notice and an opportunity to clear his name and, therefore, constituted a deprivation of plaintiff's liberty interest in violation of the Fourteenth Amendment. As set forth in detail below, the Court disagrees and finds no stigma-plus claim exists in this case based upon the undisputed facts and, thus, summary judgment is appropriate.

The Second Circuit has "recognized that a probationary employee can 'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment.'" *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)). This type of action, which is referred to as a "stigma-plus" claim, has been defined by the Second Circuit as "a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." *Segal*, 459 F.3d at 209 n.1 (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)) (quotations omitted).

A plaintiff must satisfy three elements in order to demonstrate the stigma component of a stigma-plus claim: (1) the government made stigmatizing statements about the plaintiff "that call into question [] plaintiff's good name, reputation, honor, or integrity"; (2) "these stigmatizing statements were made public"; and (3) "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Segal,* 459 F.3d at 212-213 (quotations and citations omitted).[7]

As the Second Circuit has noted, "[b]urdens that can satisfy the 'plus' prong under this doctrine include the deprivation of a plaintiff's property, *Greenwood v. New York Office of Mental Health,* 163 F.3d 119, 124 (2d Cir. 1998), and the termination of a plaintiff's government employment, *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)." *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir. 2004). Moreover, the "plus" component can be satisfied if the stigmatizing statement restricts the plaintiff's ability to obtain future employment. *See McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 280-81 (2d Cir. 1999) ("A governmental employee's constitutionally protected liberty interest is implicated when the government, in terminating the employee, imposes upon the employee a stigma which restricts his or her ability to obtain future employment. If there is public disclosure of stigmatizing allegations – or if the plaintiff demonstrates a likelihood of future disclosure

---

[7] A plaintiff is only required to raise the issue of falsity regarding the stigmatizing charges, not prove it, in order to establish a right to a name-clearing hearing. *See Codd v. Velger*, 429 U.S. 624, 627 (1977); *Patterson*, 370 F.3d at 330; *see also Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 43-44 (2d Cir. 1987) (hereinafter, "*Brandt I*") ("If [plaintiff] had to prove the falsity of the charges before he could obtain a hearing, there would be no need for the hearing." (emphasis removed)). As this burden is minimal, the Court finds that plaintiff has adequately contested the falsity of defendants' statements regarding his integrity and credibility.

– then the plaintiff must be afforded an opportunity to be heard and to clear his or her name."). The burden of proof is on the plaintiff. *See Patterson*, 370 F.3d at 330.

The Court assumes for the purpose of this summary judgment motion that plaintiff has satisfied prongs one and three of the stigma component. The statements made by Maher and Vaccaro were of a stigmatizing nature. Stigmatizing statements are those that call into question plaintiff's "good name, reputation, honor, or integrity." *Segal*, 459 F.3d at 212. Therefore, statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" will satisfy the stigma requirement. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-21 (2d Cir. 1996). The statements made by Maher and Vaccaro attack not only plaintiff's credibility, but also directly question his integrity – the very essence of this element of the stigma-plus claim. For instance, Maher's Memorandum "call[s] into question [plaintiff's] suitability to be a Suffolk County Police Officer" and questions plaintiff's "character and integrity," both of which a jury could find constituted stigmatizing statements. Moreover, the statements were also made in close proximity to plaintiff's resignation, contrary to defendants' contentions. Both memoranda were written on September 19, 2005 and plaintiff was terminated on September 20, 2005.[8] Therefore, the focus for

this summary judgment motion is whether the stigmatizing statements were made public.

1. The "Public Disclosure" Element

Plaintiff argues that prong two – the public disclosure element – was met in two ways: (1) the memoranda at issue were placed into plaintiff's application file, and (2) the contents of the memoranda have been made public under the theory of "compelling self publication." (Pl.'s Opp. Br., at 28.) The Court, however, disagrees and will address each argument accordingly.

A liberty interest is not implicated where there has been no public disclosure of the reasons for the discharge. *See Bishop*, 426 U.S. at 348 (finding no public disclosure where reasons for employee's termination were communicated orally to the employee in private, and prior to the litigation, the reasons had not been made public); *see also Gentile v. Wallen*, 562 F.2d 193, 197 (2d Cir. 1977) (finding no public disclosure where the reasons for discharge were through letters and conferences in private, and there was no claim that these communications were ever published to potential employers by the defendant). However, where the placement of stigmatizing charges in the personnel file of the discharged employee is at issue, the Second Circuit looks to the potential effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities, which varies with the circumstances of each case. *Brandt I,* 820 F.2d at 44-45.

With regard to the first argument, plaintiff contends that, assuming the memoranda are part of plaintiff's personnel file, they "may"

---

[8] Defendants incorrectly assume that, because the statements were not made public, there can be no causal connection between the statements and plaintiff's alleged termination. (*See* Defs.' Mem. of Law, at 7.) All that is required on this element is that the statements be made in a time period

close in time to plaintiff's dismissal, which a jury could find in the instant case.

be available to other potential employers. (*Id.*) The Second Circuit has held that the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim. *Segal*, 459 F.3d at 213 (citing *Brandt I*, 820 F.2d at 45). However, this Court must not only look at *Brandt I*, but also must examine the later decision in the same case, *Brandt v. Bd. of Coop. Educ. Servs.*, 845 F.2d 416 (2d Cir. 1988) (hereinafter, "*Brandt II*").

In *Brandt*, a public school teacher was charged with various acts of sexual misconduct involving his students, and those allegations were placed in his personnel file. *Brandt I*, 820 F.2d at 42-43. The plaintiff sought a name-clearing hearing pursuant to 42 U.S.C. § 1983, based on the presence of allegedly false and defamatory charges in his personnel file. *Id.* at 43. The district court granted summary judgment for the defendants, holding that defendants must prove that defendants had *actually disclosed* false allegations of sexual misconduct. *Id.* at 46. The Second Circuit in *Brant I* reversed the district court, holding that, in establishing the "public disclosure" requirement, it is sufficient that plaintiff demonstrate a likelihood of future disclosure. *Id.* The court remanded the case back to the district court, where Brandt would be given the "opportunity to substantiate his contention that appellees are likely to make his personnel file available to prospective employers." *Id.* at 47 ("Only if [plaintiff] is able to prove a *likelihood of future disclosure* will he be entitled to relief under § 1983.") (emphasis added).

On remand, the district court granted summary judgment on the grounds that all of the stigmatizing charges against Brandt had been removed from the personal file and there was no longer a likelihood of future disclosure

to establish a violation of plaintiff's liberty interest. *Brandt II*, 845 F.2d at 417. On appeal (*Brant II*), the Second Circuit affirmed the order of the district court, finding that "once the allegations were removed, there no longer existed a likelihood that Brandt would be denied future job opportunities because of the allegations formerly contained in his file." *Id.* at 418. The Second Circuit held that "[s]ince plaintiff can show neither actual disclosure nor a likelihood of any future disclosure of the stigmatizing allegations subsequently removed from his personnel file, he has failed to establish a violation of his protected liberty interest in his 'good name, reputation, honor, or integrity.'" *Id.* (quoting *Board of Regents*, 408 U.S. at 573).

As a threshold matter, in the instant case, defendants contend that the memoranda were never placed in plaintiff's personnel file. Plaintiff attempts to raise issues of fact as to whether defendant's contention is true. For example, although defendants contend that the memoranda at issue were not placed in plaintiff's personnel file, plaintiff points to testimony by Maher that information concerning a candidate's investigation and background is generally kept in a personnel folder. (Maher Dep., at 46, 116.) However, the Court need not address this factual issue because, even assuming *arguendo* that plaintiff had evidence that the contents of plaintiff's personnel file contained the memoranda at some point in the past, plaintiff's stigma-plus claim still fails for all of the reasons outlined below.

As in *Brandt II*, defendants here have stipulated in the reply declaration that "no document either in plaintiff's personnel file or any other document in the custody of the Suffolk County Police Department will ever be made available to any third party." (Defs.' Reply Decl. ¶ 14.) Furthermore, it is

uncontroverted that no third party has yet requested the contents of plaintiff's file.[9] Even assuming a third party could have possibly (but did not) request the contents of plaintiff's file prior to defendants' stipulation, that is not enough to satisfy the "public disclosure" requirement of the stigma-plus claim. *Brandt II*, 845 F.2d 416, 418 ("That potential employers could have gained access to Brandt's file in the interim period before removal of the allegations is not of sufficient consequence by itself to implicate a liberty interest under the fourteenth amendment."). Since plaintiff has absolutely no evidence of actual disclosure and the defendants' stipulation in its Reply Declaration eliminates the likelihood of any future disclosure of the stigmatizing allegations because they have been made unavailable to third-parties, this case is identical to the situation in *Brandt II* and plaintiff has failed as a matter of law to establish a violation of his protected liberty interest in his "good name, reputation, honor, or integrity." *Board of Regents*, 408 U.S. at 573.

In his sur-reply, plaintiff attempts to avoid the clear application of *Brandt II* by arguing that, although there has been no actual disclosure by the defendants of the allegedly "stigmatizing" statements and no likelihood of future disclosure because of allegations that formerly may have been contained in his file, plaintiff nevertheless has been damaged because he was denied subsequent employment at the CIA and other law enforcement agencies because he was "self compelled" to disclose the reasons for his departure during job interviews or in applications for such positions. Specifically, plaintiff contends:

> The damage that the Brandt Plaintiff was concerned about has already occurred in the instant case when Plaintiff Walsh was interviewed by other law enforcement agencies, and was forced to explain his departure from the SCPD without the benefit of a name-clearing hearing. In addition, the CIA's employment application specifically asked if the candidate had ever "Quit a job after being told you'd be fired?" Plaintiff was unable to adequately explain the facts of his departure, and without the benefit of an actual hearing, the stigma remains.

(Plaintiff's Sur-Reply Letter, at 3.) The Court finds plaintiff's futile attempt to distinguish *Brandt II* unavailing from both a factual and legal standpoint.

First, with respect to the facts, it is critical to emphasize that *within days of his resignation from the SCPD*, the plaintiff, in an effort to demonstrate the unfairness of his situation, provided all the material details to the press in terms of both the circumstances surrounding the criminal investigation of him in California and his failure to disclose that investigation to the SCPD as the reason he had to resign. Thus, it was *the plaintiff* who

---

[9] Plaintiff does not provide any evidence indicating a third party had access to the memoranda or the contents thereof. In fact, defendants provided evidence indicating the contrary: (1) Maher's affidavit stating that no internal document was ever given to any third party in connection with a request by any future employer or provided to the general public (Defs.' Exh. B ¶¶ 6, 8.); and (2) an affidavit by the custodian of police officer personnel files stating that there is "no record of any written inquiry and/or authorization requesting information on Dennis J. Walsh" and that "no records from his personnel file have been sent to anyone" (Defs.' Exh. C ¶¶ 7, 8.). Thus, there is no evidence of disclosure of this information in the memoranda by the defendants to any third party.

made the disclosure to a third party of the allegedly stigmatizing statements by self-publicizing such statements to the *Daily News* in an article that ran on September 27, 2005, prior to any self-reporting to future employers he felt obligated to perform in connection with his October 1, 2005 CIA application or any other job applications.[10] In fact, although highly criticized in the article, the SCPD refused to comment on plaintiff's situation, citing privacy concerns. There is no legal basis for this plaintiff to seek to recover for the disclosure of stigmatizing statements/information that he, rather than the defendants, revealed to a third party, such as the press. *See, e.g., Mosca v. Cole,* No. 05-4350, 2007 WL 470505, at *5 (3d Cir. Feb. 14, 2007) ("In fact, [Plaintiff] himself told a number of people about the alleged comment and stated to potential employers and eventually a newspaper that he believed it was the reason for his termination. Because there is no issue of fact as to whether [defendants] 'published' the alleged remark, summary judgment was appropriate as to [plaintiff's] due process claim."); *Finnegan v. Bd. of Educ. of the Enlarged City Sch. Dist. of Troy,* Civ. No. 92-CV-732 RWS, 1993 WL 729846, at *7-*8 (N.D.N.Y. Nov. 18, 1993) (granting summary judgment on due process claim where plaintiff made allegedly stigmatizing statements public by, among other things, appearing on national television shows).

Plaintiff attempts to argue that his statements to the press have no impact on his claim here because his statements to the *Daily News* did not disclose the particular references in SCPD internal memoranda (that are the subject of this lawsuit) questioning his credibility and integrity because of his failure to disclose information during the SCPD application process regarding his contact with police in California. The Court, however, finds this argument unpersuasive. Although the article does not use the precise adjectives or terminology of the internal memoranda (because the memoranda have never been disclosed by the defendants), the clear substance of the allegedly stigmatizing statements was disclosed by the plaintiff in that he advised the newspaper that he was forced to resign because the SCPD had concluded that he intentionally failed to disclose this California criminal investigation. Indeed, there are several references in the September 27 article and the follow-up October 2 article to the fact that, although plaintiff claimed he forgot to disclose it, the SCPD requested his resignation because they did not believe the disclosure was inadvertent. *See* Defs.'s Ex. U ("'On Sept. 12, I started the Suffolk [police] academy,' Walsh says. 'On Sept. 20, I was told I would have to resign or be terminated.' Walsh claims that Suffolk police told him he had left out something in his criminal background."); *see also id.* ("Still, I [the author of the article] asked Walsh how he could possibly forget an incident like this [in California], when his character was challenged."); Defs.' Ex V ("On Sept. 21 Walsh was forced to resign because police brass said he had failed to mention on his application that seven years ago he had been questioned but never charged by police

_____
[10] Moreover, even though plaintiff applied to the CIA on October 1, 2005, he did not receive notification that he would be screened until November 11, 2005, a time well beyond plaintiff's own publication in the newspaper regarding the facts of his termination. Furthermore, plaintiff also contends that he was forced to disclose this information during his CIA interview on May 14, 2006, almost 7 months after the publication of plaintiff's statements in the newspaper. Finally, plaintiff does not provide any evidence that the CIA requested plaintiff's personnel files, only that he disclosed the information to the CIA on his own.

in California concerning an unfounded allegation by a spurned lover that he tried to extort money from this woman with videotapes she claimed he made while having sex with her."); *see also id.* ("[H]e was dumped by Suffolk police because he failed to mention on his application that he was once questioned.") Therefore, the substance of the allegedly stigmatizing statements in the internal memoranda that went to his reputation for honesty and integrity was fully disclosed by plaintiff to the press – namely, that SCPD asked for his resignation because they did not believe him when he told them he forgot about the California investigation at the time he filled out his SCPD application. In short, plaintiff's contention that some type of compelled self-reporting by plaintiff to the CIA, rather than the plaintiff's voluntary report to the newspapers, led to disclosure of the stigmatizing statements is simply contradicted by the undisputed record. Thus, given plaintiff's statement to the press, the alleged subsequent "self reporting" was not the source of any damage in this case and, therefore, cannot factually form the basis of any due process claim. *See, e.g., Finnegan*, 1993 WL 729846, at *7 ("[T]his court finds that plaintiff has not produced any competent evidence establishing that any of the defendants made the contents of the [allegedly stigmatizing] October 15 letter public. Rather, it was plaintiff and his wife who engaged in an extensive media campaign. Surely no liability under section 1983 can be imposed on defendants as a result of plaintiff's own actions.").

In any event, even assuming *arguendo* that it was in fact plaintiff's self-reporting to the CIA and other third parties in his subsequent employment process that led to disclosure of the stigmatizing information (rather than his statement to the press), there is still no legal basis for holding the

defendants liable for such self-reporting by plaintiff. Neither *Brandt II* nor any subsequent decisions suggests that a defendant, who never disclosed the stigmatizing information and agrees to never disclose it in the future, can still face liability for a stigma-plus claim because the plaintiff has disclosed such information on his own, or may need to disclose such information in the future, to prospective employers in response to questions on applications or during interviews about the reasons for departure from his or her prior jobs.[11] To the contrary, although not specifically addressing the "self-reporting" issue, *Brandt II* makes abundantly clear that, if there has been no actual disclosure by the defendants and a stipulation

---

[11] By analogy, in the context of defamation, New York law has yet to clearly recognize a cause of action for alleged "compelled self-publication." *See Wieder v. Chem. Bank,* 202 A.D.2d 168, 169 (N.Y. App. Div. 1994); *Jaliman v. Selendy,* No. 12820/04, 2005 WL 818447, at *6 (N.Y. Sup. Ct. 17, 2005) (unreported decision) ("New York does not recognize a cause of action for defamatory words that are voluntarily re-published by the plaintiff himself"); *see also Ascione v. Pfizer, Inc.,* 312 F. Supp. 572, 579 (S.D.N.Y. 2004) ("The status of the tort of defamation by 'compelled self-publication' is, at best, unclear under New York law."); *Keeney v. Kemper Nat'l Ins. Cos.,* 960 F. Supp. 617, 630 (E.D.N.Y. 1997) ("New York does not recognize a cause of action for 'compelled self-publication'"); *Tischmann v. ITT/Sheraton Corp.,* 882 F. Supp. 1358, 1371 (S.D.N.Y. 1995) (same); *see generally McCleester v. Mackel,* No. 06-120J, 2008 WL 821531, at *23 (W.D. Pa. Mar. 27, 2008) ("Although neither the Supreme Court nor the Court of Appeals for the Third Circuit has clearly explained the *extent* to which *Bishop* requires defamatory statements to be made 'public,' the Court has discovered some authority which suggests that the stigma-plus test's 'publication' requirement may be similar to that applied by the general law of defamation.") (collecting cases).

of no future disclosure, any due process claim will be eliminated as a matter of law:

> The issue now before us is whether the removal of the stigmatizing allegations from Brandt's personnel file subsequent to our decision in *Brandt I* vitiates his due process claim. In *Brandt I*, we were not satisfied with defendants' mere assertion that it was the Board's policy not to disclose to prospective employers unsubstantiated allegations contained in an employee's personnel file. On remand, defendants provided the district court with a copy of Brandt's complete record along with an affidavit of Superintendent Murphy, both of which indicated that any references to the stigmatizing allegations had been deleted from Brandt's personnel file. Superintendent Murphy also directed his subordinates not to reveal to prospective employers the allegations which led to Brandt's termination. In addition, it was uncontroverted that the information in Brandt's file was never publicly disclosed by the Board. We agree with the district court's conclusion that once the allegations were removed, there no longer existed a likelihood that Brandt would be denied future job opportunities because of allegations contained his file. . . . Accordingly, we find that the district court properly granted summary judgment in favor of the defendants.

*Brandt II*, 845 F.2d at 417-18.[12] In the instant case, despite any purported need by plaintiff to self-report the information to future employers or any other third parties, defendants have followed the requirements of *Brandt II* and are, thus, entitled to summary judgment.

### 2. The Availability of an Article 78 Proceeding

Even if the Court assumes *arguendo* that plaintiff could satisfy the "public disclosure" requirement and demonstrate the deprivation of his liberty interest, the plaintiff must also demonstrate that his liberty was deprived without due process of law. The Court finds that plaintiff cannot satisfy this component in this case as a matter of law because of the availability of an Article 78 proceeding.

The Second Circuit has held that in a "case involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim." *Segal*, 459 F.3d at 214. Moreover, due process does not require a *pre*-termination name-clearing hearing with

---

[12] The Second Circuit also reached the same conclusion in *McCullough* in finding summary judgment for the defendant was appropriate based on the following: "The record in this case contains uncontroverted evidence that the allegedly stigmatizing allegations have never been made public, and that, at Wilson's direction, the material has been permanently removed from appellee's personnel file. Additionally, Wilson has instructed school district personnel not to reveal the substance of the allegedly stigmatizing information to prospective employers. . . . Appellee has proffered no evidence beyond his own speculation that the allegedly stigmatizing allegations were disclosed or are likely to be disclosed." 187 F.3d at 281.

respect to at-will employees. *See Segal,* 459 F.3d at 216-17 ("Because an at-will employee lacks a property interest in continued employment, she has no right to a particular outcome following an adequate name-clearing hearing; the government is simply required to provide her with an opportunity to salvage her name. In our view, there is no reason to believe this limited right – a meaningful opportunity to clear one's name – cannot be adequately vindicated at a reasonably prompt, post-termination name-clearing hearing.") (citations omitted).

New York provides for such a name-clearing hearing pursuant to CPLR Article 78, which allows a dismissed municipal employee an avenue for challenging his termination as arbitrary and capricious and contrary to law. It is well settled that the availability of an Article 78 proceeding bars a municipal employee from maintaining a Section 1983 procedural due process claim. The availability of an adequate post-deprivation procedure for reviewing the propriety of the dismissal means that there has been no constitutional violation.[13] *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 538-39 (1981); *see also HANAC v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) ("Even if HANAC has a protectable property and liberty interest – on which we express no opinion – HANAC, because of the availability of an Article 78 proceeding, was not deprived of such property or liberty without due process of law."); *accord Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001); *Campo v. New York City Employees' Ret. Sys.,* 843 F.2d 96, 101 (2d Cir. 1988). Article 78 proceedings have been held to be adequate post-deprivation procedures and they frequently function as name-clearing hearings. *See, e.g., Blum v. Quinones*, 139 A.D.2d 509, 510 (N.Y. App. Div. 1988); *Merhige v. Copiague Sch. Dist.*, 76 A.D.2d 926, 927 (N.Y. App. Div. 1980).

In the instant case, plaintiff never brought an Article 78 proceeding in state court and has not set forth any basis for concluding the available state remedy was inadequate. Where, as here, the plaintiff had available adequate process, he cannot be said to have been "deprived of due process simply because [he] failed to avail [himself] of the opportunity." *HANAC*, 101 F.3d at 881 (internal quotation marks omitted). The Article 78 proceeding was available to plaintiff, and as discussed above, that availability means there is no constitutional violation. Accordingly, even assuming *arguendo* that there was evidence to support a stigma-plus claim, that due process claim is not cognizable in this case because of an adequate remedy in form of an Article 78 proceeding for any such deprivation.

In sum, viewing the evidence in the light most favorable to the plaintiff, there is no evidence from which a reasonable jury could conclude that plaintiff's right to due process

---

[13] To the extent plaintiff argues that the police department did not make him aware of the Article 78 proceeding and such failure should bar defendants' reliance on the existence of such a remedy to preclude his claim, the Court finds that argument is unpersuasive. Plaintiff has cited no law indicating that employers in these circumstances are required to inform employees of the availability of an Article 78 proceeding and the Court concludes there is no such notice requirement in this particular situation. *See, e.g., Vialez v. N.Y. City Hous. Auth.,* 783 F. Supp. 109, 121 (S.D.N.Y. 1991) ("New York does provide an adequate avenue for appeal of a Housing Authority decision, and due process does not require that plaintiff have been sent notice of that opportunity to appeal.").

has been violated.[14]  Therefore, summary judgment is warranted with respect to the due process claim.

## D.  Pendent State Claims

In addition to the Section 1983 due process claim, plaintiff asserts two state law claims – breach of contract and slander.  "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'"  *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)).  Therefore, in the instant case, the Court, in its discretion, "decline[s] to exercise supplemental jurisdiction over [plaintiffs'] state law claims [because] it has dismissed all claims over which it has original jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.");  *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").  Moreover, the Second Circuit has recognized that the dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where as here, the resolution of the state law claims entails resolving additional legal and factual issues.  *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 118-19 (2d Cir. 2007).  Accordingly, pursuant to 42 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state claims, and dismisses such claims, without prejudice.

---

[14]    Defendants also argue that "plaintiff's voluntary release in connection with the application procedure, fully discharges Suffolk County and it's [sic] employees from litigation with respect to the usage of the documents obtained" and "[a]s a result, plaintiff has no right to commence and maintain this suit."  (Reply Declaration ¶ 16).  The Court concludes that the waiver provides an alternative ground for granting summary judgment for defendants.  Specifically, plaintiff signed a release authorizing all law enforcement agencies to disclose to the SCPD any and all information, as well as fully discharging Suffolk County and its employees from litigation with respect to the usage of the documents obtained.  (*See* Defs.' Exh. F.)  Since the federal claim clearly arises directly out of the defendants' use of documents and information it obtained pursuant to the Authorization to Release Information and Waiver, dated June 11, 2005 and plaintiff has pointed to no basis for questioning the waiver's validity, the waiver precludes plaintiff from asserting the federal claim in this lawsuit .  *See, e.g., Flood*, 820 F. Supp. at 714 n.10 (holding to the extent that "plaintiff lost [his] position as a New York City probationary officer as a result of information supplied by defendants, disclosures made pursuant to a release signed by a probationary police officer are not protected by the Fourteenth Amendment") (citing *Redmond v. City of Overland Park*, 672 F. Supp. 473, 483 (D. Kan. 1987)).

IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in its entirety with respect to the federal claims. The state claims are dismissed without prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 5, 2008
Central Islip, NY

* * *

The attorney for the plaintiff is Brendan Chao, Esq., 67 Cutter Mill Road, Great Neck, NY 11021. Defendants are represented by Chris P. Termini, Esq., Assistant County Attorney, of the Suffolk County Attorney's Office, H. Lee Dennison Building, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788-0099.